# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN
# MILWAUKEE DIVISION

| | |
|---|---|
| GAIL PIRKLE, MARIE SEVERNS, JOSETTE BAUER, KEVIN DUNN, and DEBORAH LEVER Individually and on Behalf of All Others Similarly Situated, | Case No.: 17-cv-121 <br><br> **CLASS ACTION COMPLAINT** |
| Plaintiffs, | **Jury Trial Demanded** |
| v. | |
| PORTFOLIO RECOVERY ASSOCIATES, LLC, | |
| Defendant. | |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA") and the Wisconsin Consumer Act, chapter 427, Wisconsin Statutes (the "WCA").

## JURISDICTION AND VENUE

2. The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331 and 1337. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3. Plaintiff Gail Pirkle is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff Marie Severns is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

5. Plaintiff Josette Bauer is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

6. Plaintiff Kevin Dunn is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

7. Plaintiff Deborah Lever is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

8. Each Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from each Plaintiff a debt allegedly incurred for personal, family or household purposes.

9. Each plaintiff is also a "customer" as defined in the Wisconsin Consumer Act, Wis. Stat. § 421.301(17), in that they engaged in a consumer transaction.

10. Defendant Portfolio Recovery Associates, LLC ("PRA") is a debt collection agency with its principal place of business located at 120 Corporate Blvd., Norfolk, VA 23502.

11. PRA is one of the nation's largest buyers of defaulted loans, credit card accounts, car loans and other debts, which it purchases from creditors at a substantial discount to the face value of the debts. It then attempts to collect these debts.

12. In 2013, PRA purchased more than $4.7 billion of charged-off Debts from banks, consumer and auto finance companies, and retail merchant finance companies. PRA paid pennies on the dollar of the face value of these debts, perhaps as low as four cents on the dollar.

13. PRA is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

14. PRA is in the business of purchasing and collecting debts, incurred for personal, family or household purposes, which are in contractual default at the time of purchase. *See Schlosser v. Fairbanks Capital Corp.*, 323 F.3d 534 (7th Cir. 2003).

15. The FDCPA treats assignees as debt collectors if the debt sought to be collected was in default when acquired by the assignee, and as creditors if it was not. 15 U.S.C. §

2

Case 2:17-cv-00121-DEJ   Filed 01/25/17   Page 2 of 18   Document 1

1692a(6)(F)(iii); *Schlosser*, 323 F.3d at 536, *citing Bailey v. Sec. Nat'l Serving Corp.*, 154 F.3d 384, 387 (7th Cir. 1998); *Whitaker v. Ameritech Corp.*, 129 F.3d 952, 958 (7th Cir. 1998); *Pollice v. Nat'l Tax Funding, L.P.*, 225 F.3d 379, 403-04 (3d Cir. 2000); *Wadlington v. Credit Acceptance Corp.*, 76 F.3d 103, 106-07 (6th Cir. 1996); *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985).

16. With respect to the Plaintiff and the Class, PRA is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103(3), because PRA purchased Plaintiff's and the class members' alleged debts after those alleged debts were in default.

## FACTS

### *Pirkle Letter*

17. On or about June 20, 2016, PRA mailed a debt collection letter to Plaintiff regarding an alleged debt, allegedly owed to PRA and originally owed to "Comenity Bank" ("Comenity"). A copy of this letter is attached to this complaint as Exhibit A.

18. The alleged debt identified in Exhibit A is an alleged credit card account, originally owed to Comenity.

19. Upon information and belief, Exhibit A is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

20. Upon information and belief, Exhibit A is a form debt collection letter used by PRA to attempt to collect alleged debts.

21. Plaintiff used this credit card only for personal, family or household purposes, namely, purchases of household goods and services. Plaintiff did not open or use the credit card account for any business purpose.

22. The credit card account identified in Exhibit A was in default, closed, and upon information and belief, charged off by Comenity before Comenity sold the account to PRA. Upon information and belief, Comenity sells only defaulted and charged off credit card accounts to debt buyers such as PRA.

23. Exhibit A states the following:

```
**The following is a breakdown of your balance since charge-off:
Total Amount of Debt Due at charge-off: $703.19
Total Amount of Transactions since charge-off:
        Interest: $0.00
        Non-Interest Charges/Fees or Balance Adjustments: $0.00
        Payments: $0.00
Total Now Due: $703.19
```

### *Severns Letter*

24. On or about July 25, 2016, PRA mailed a debt collection letter to Plaintiff regarding an alleged debt, allegedly owed to PRA and originally owed to "Citibank, N.A." ("Citibank"). A copy of this letter is attached to this complaint as Exhibit B.

25. The alleged debt identified in Exhibit B is an alleged credit card account, originally owed to Citibank.

26. Upon information and belief, Exhibit B is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

27. Upon information and belief, Exhibit B is a form debt collection letter used by PRA to attempt to collect alleged debts.

28. Plaintiff used this credit card only for personal, family or household purposes, namely, purchases of household goods and services. Plaintiff did not open or use the credit card account for any business purpose.

4

29. The credit card account identified in Exhibit B was in default, closed, and upon information and belief, charged off by Citibank before Citibank sold the account to PRA. Upon information and belief, Citibank sells only defaulted and charged off credit card accounts to debt buyers such as PRA.

30. Exhibit B states the following:

```
**The following is a breakdown of your balance since charge-off:
Total Amount of Debt Due at charge-off: $1,999.12
Total Amount of Transactions since charge-off:
       Interest: $0.00
       Non-Interest Charges/Fees or Balance Adjustments: $0.00
       Payments: $0.00
Total Now Due: $1,999.12
```

### *Lever Letter*

31. On or about March 4, 2016, PRA mailed a debt collection letter to Plaintiff regarding an alleged debt, allegedly owed to PRA and originally owed to "WEBBANK" ("WEBBANK"). A copy of this letter is attached to this complaint as Exhibit C.

32. Upon information and belief, the alleged debt referred to in Exhibit C is an alleged Bluestem credit account, allegedly owed to WebBank.

33. Credit accounts are "open-end credit plans," pursuant to Wis. Stat. § 421.301(27)(a). "Open-end credit plans" are, by definition, "consumer credit transactions." Wis. Stat. § 421.301(10) ("The term [consumer credit transaction] includes … transactions pursuant to open-end credit plans.").

34. Upon information and belief, Exhibit C is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

35. Upon information and belief, Exhibit C is a form debt collection letter used by PRA to attempt to collect alleged debts.

36. Plaintiff used this credit account only for personal, family or household purposes, namely, purchases of household goods and services. Plaintiff did not open or use the credit account for any business purpose.

37. The credit card account identified in Exhibit C was in default, closed, and upon information and belief, charged off by WEBBANK before WEBBANK sold the account to PRA. Upon information and belief, WEBBANK sells only defaulted and charged off credit accounts to debt buyers such as PRA.

38. Exhibit C states the following:

```
**The following is a breakdown of your balance since charge-off:

Total Amount of Debt Due at charge-off: $530.53
Total Amount of Transactions since charge-off:
    Interest: $0.00
    Non-Interest Charges/Fees or Balance: $0.00
    Adjustments:
    Payments: $0.00
Total Now Due: $530.53
```

### FDCPA and WCA Violations

39. Exhibits A, B and C are confusing and misleading to the unsophisticated consumer.

40. Exhibits A, B and C threaten to collect "Interest" and "Non-Interest Charges/Fees or Balance Adjustments." Although the amounts of each in Exhibits A, B and C are $0.00, the letter implies that there could be interest or fees added to the debt in a future letter. *Tylke v. Diversified Adjustment Serv.*, No. 14-cv-748; 2014 U.S. Dist. LEXIS 153281, *7 (E.D. Wis. Oct. 28, 2014) ("the inclusion of a collection fee, even one showing a balance of zero, could imply the future possibility of one.").

41. Upon information and belief, PRA does not actually add interest and fees to consumer collection accounts.

42. Further, PRA could not add any "fees" to Plaintiffs' accounts.

43. Any purchases made with a personal credit card account or personal credit account were "consumer credit transactions" under the WCA, Wis. Stat. §§ 421-427.

44. Wis. Stat. § 421.301(10) defines a "consumer credit transaction":

> a consumer transaction between a merchant and a customer in which real or personal property, services or money is acquired on credit and the customer's obligation is payable in installments or for which credit a finance charge is or may be imposed, whether such transaction is pursuant to an open-end credit plan or is a transaction involving other than open-end credit. The term includes consumer credit sales, consumer loans, consumer leases and transactions pursuant to open-end credit plans.

45. Credit card transactions are, by definition, "transactions pursuant to open-end credit plans." Wis. Stat. § 421.301(27)(a).

46. The WCA specifically prohibits the attachment of collection fees and other "default charges" on consumer credit transactions, even if the fee is separately negotiated. Wis. Stat. § 422.413(1) provides:

> no term of a writing evidencing a consumer credit transaction may provide for any charges as a result of default by the customer other than reasonable expenses incurred in the disposition of collateral and such other charges as are specifically authorized by chs. 421 to 427.

*See also Patzka v. Viterbo College*, 917 F. Supp. 654, 659 (W.D. Wis. 1996).

47. Neither Wis. Stat. § 422.202, entitled "Additional charges," nor any other section of the WCA, lists collection fees as a permissible fee a creditor may charge in connection with a consumer credit transaction.

48.     Because credit card transactions and credit account transactions are consumer credit transactions, <u>Exhibits A, B and C</u> falsely state or imply that PRA has a right to add collection fees to the debt.

49.     Even if a provision of any agreement between Plaintiffs and the original creditor would purport to permit PRA to impose a collection fee, the WCA prohibits such fees. Wis. Stat. § 421.106(1) ("Except as otherwise provided in chs. 421 to 427, a customer may not waive or agree to forego rights or benefits under chs. 421 to 427."); *See also Lox v. CDA, Ltd.*, 689 F.3d. 818 (7th Cir. 2012) (false representation that attorney fees would be added when they could not be, violated 1692e).

50.     The alleged debts have been accelerated and sold to a debt buyer, PRA. There are no fees that could conceivably be added to Plaintiffs' alleged debts.

### *Bauer Letter*

51.     On or around August 11, 2016, PRA mailed a debt collection letter to Plaintiff regarding allegedly owed to PRA and originally owed to "SYNCHRONY BANK" ("SYNCHRONY"). A copy of this letter is attached to this complaint as <u>Exhibit D</u>.

52.     A copy of this letter is attached to this complaint as <u>Exhibit D</u>.

53.     Upon information and belief, the alleged debt identified in <u>Exhibit D</u> was an alleged personal credit card, used only for personal, family or household purposes.

54.     Upon information and belief, <u>Exhibit D</u> is a form letter, generated by a computer, and with the information specific to Plaintiff inserted by the computer.

55.     Upon information and belief, <u>Exhibit D</u> is a form debt collection letter used by PRA to attempt to collect alleged debts.

56.     <u>Exhibit D</u> states the following:

8



57. Exhibit D also contains the following text:

Exhibit D.

58. However, neither the "6 Monthly Payments" option nor the "12 Monthly Payments" option adds up to the "Full Balance."

59. Six monthly payments of $348.89 equal a total of $2094.34

60. Twelve monthly payments of $174.44 equal a total of $2,093.28.

61. Each option leaves the consumer short of the amount of the "Full Balance."

### *Dunn Letter*

62. On or around February 10, 2016, PRA mailed a debt collection letter to Plaintiff regarding allegedly owed to PRA and originally owed to "CAPITAL ONE BANK (USA), N.A." ("Capital One"). A copy of this letter is attached to this complaint as Exhibit E.

63. A copy of this letter is attached to this complaint as Exhibit E.

64. Upon information and belief, the alleged debt identified in Exhibit E was an alleged personal credit card, used only for personal, family or household purposes.

9

65. Upon information and belief, <u>Exhibit E</u> is a form letter, generated by a computer, and with the information specific to Plaintiff inserted by the computer.

66. Upon information and belief, <u>Exhibit E</u> is a form debt collection letter used by PRA to attempt to collect alleged debts.

67. <u>Exhibit E</u> states the following:

**Balance: $1,677.82**

68. <u>Exhibit E</u> also contains the following text:

> **33 Month Installment Option**
> - Pay $50.00 for 33 consecutive months
>
> *Your account will be considered "Paid in full" after your final payment is posted.

69. However, the "33 Month Installment" option does not add up to the "Full Balance."

70. Thirty three monthly payments of $50.00 equal a total of $1,650.00.

71. The "33 Month Installment" option leaves the consumer short of the amount of the "Full Balance."

### *FDCPA Violations*

72. The language in Paragraphs 57 and 64 is confusing and misleading to the unsophisticated consumer. <u>Exhibit D</u> includes a 6 or 12 month payment option to "Pay The Full Balance" and <u>Exhibit E</u> includes a 33 month "Installment Option." <u>Exhibits D and E</u> both state

that "Your account will be considered 'Paid in Full' after your final payment is successfully posted."

73. However, the "Paid in Full" payment options in Exhibit D and E do not actually add up to the full "Balance," or amount of the debt, as listed in Paragraphs 56 and 63.

74. Exhibits D and E are ambiguous and capable of at least two meanings. It is unclear whether completing the "paid in full" payment plans, which do not add up to the actual amount of the debt, would be treated as settlements or as a partial payment against Plaintiff's full balance. Exhibits D and E.

75. PRA's language leaves open the possibility that the consumer will make the 6, 12 or 33 monthly payments, only to have the entire payment applied to the actual "full balance" resulting in the consumer still owing a portion of the debt.

76. Treating the payments as being short of the actual full amount of the debt would permit PRA or third party debt collectors hired by PRA to continue to try to collect on the same debt.

77. A consumer could pay the 6, 12 or 33 monthly payments and not know whether he or she has resolved the account. Exhibits D and E. The language is confusing to the unsophisticated consumer.

78. Moreover, the unsophisticated consumer could not determine whether timely making all payments under the would result in Barclays representing to credit reporting agencies that the account is paid in full, settled in full, or partially paid with outstanding balance.

79. The language identified above is ambiguous and confusing. The letters purport to offer treatment of accounts as "paid in full" when the payments do not add up to the balance. The

consumer who makes all the requested payments cannot know if Portfolio would actually treat and report the debt as settled or paid in full.

80. The consequences of misleading a consumer with respect to settling a debt are much greater than misleading about the amount of the debt, in that a significantly larger portion of the balance may remain after a failed "settlement" than the few additional dollars or cents remaining (usually due to the addition of interest or fees) after a "full payment." *See eg. Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872, 876 (7th Cir. 2000).

81. An account reported to a credit reporting agency as "settled in full" has a greater negative effect on a consumer's credit score than an account reported as "paid in full." Thus, consumers who are able to pay off a balance may wish to pay the entire amount instead of settle for a smaller amount to effect an improvement in their credit score.

82. PRA's misrepresentations are material misrepresentations because they mislead the unsophisticated consumer about the nature of the settlement offer.

83. 15 U.S.C. § 1692e generally prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

84. 15 U.S.C. § 1692e(2)(a) specifically prohibits the "false representation of the character, amount, or legal status" of an alleged debt.

85. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

86. 15 U.S.C. § 1692f generally prohibits "unfair or unconscionable means to collect or attempt to collect any debt."

87. Wis. Stat. § 427.104(1)(j) states that a debt collector may not: "Claim, or attempt or threaten to enforce a right with knowledge or reason to know that the right does not exist."

12

Case 2:17-cv-00121-DEJ    Filed 01/25/17    Page 12 of 18    Document 1

88. Wis. Stat. § 427.104(1)(L) also specifically prohibits a debt collector from "[t]hreaten[ing] action against the customer unless like action is taken in regular course or is intended with respect to the particular debt."

89. Plaintiffs were confused by Exhibits A-E.

90. Plaintiffs had to spend time and money investigating Exhibits A-E, and the consequences of any potential responses to Exhibits A-E.

91. Plaintiffs had to take time to obtain and meet with counsel, including traveling to counsel's office by car and its related expenses, including but not limited to the cost of gasoline and mileage, to advise Plaintiff on the consequences of Exhibits A-E.

92. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)).

93. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt

13

collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses"). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

## COUNT I – FDCPA

94. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

95. Count I is brought on behalf of Plaintiffs Severns, Pirkle, and Lever.

96. The references in PRA's letters to "Interest," "Fees," "Non-Interest Charges" and "Balance Adjustments" are false, misleading and confusing.

97. PRA threatened to add interest and fees to Plaintiffs' debts when PRA is not entitled to any fee and does not add interest to accounts such as Plaintiff's.

98. PRA's misrepresentation of the amounts it would attempt to collect is an unfair and/or unconscionable method by which to try and collect an alleged debt.

99. As these statements are threatening and/or confusing to the unsophisticated consumer recipient so as to falsely imply that the creditor is entitled to receive a collection fee, they are an unfair and/or unconscionable method for attempting to collect a debt.

100. The unsophisticated consumer would be confused by the nebulous references in PRA's letter to "Fees," "Non-Interest Charges" and "Balance Adjustments" and would have no idea what those charges are, potentially could be, or whether they would be legitimate.

14

101. PRA violated 15 U.S.C. §§ 1692e, 1692e(10), 1692f and 1692f(1).

## **COUNT II -- WCA**

102. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

103. Count II is brought on behalf of Plaintiffs Severns, Pirkle and Lever.

104. <u>Exhibits A, B and C</u> threaten to enforce a right to a collection fee, even though Defendant knew or should have had reason to know that no such right existed at the time the letters were sent.

105. <u>Exhibits A, B and C</u> also threaten to collect interest, even though PRA does not add interest to accounts such as Plaintiffs'.

106. PRA violated Wis. Stat. §§ 427.104(1)(j) and 427.104(1)(L).

## **COUNT III – FDCPA**

107. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

108. Count III is brought on behalf of Plaintiffs Bauer and Dunn.

109. <u>Exhibits D and E</u> include an payment plan offer that is misleading.

110. If a consumer chooses to mail in payments in an attempt to take advantage of the "Paid in Full" monthly installment plan listed on the letter, Defendant could, under one interpretation of <u>Exhibits D-E</u>, apply the payments toward the actual "full balance" instead of settling the debt.

111. It is also unclear whether completing the "paid in full" payment plans, which do not add up to the actual amount of the debt, would be treated as settlements because the payments are short of the actual balance.

15

112. <u>Exhibits D-E</u> mislead the unsophisticated consumer and encourage payments that do not actually settle the alleged debt, allowing PRA or third party debt collectors hired by PRA to continue collecting the remaining balance.

113. <u>Exhibits D-E</u> also confuse the consumer as to whether an account would be reported to credit reporting agencies as "settled in full" or "paid in full" after completion of the payment plans, as the payments are short of the balances.

114. Defendant violated 15 U.S.C. §§ 1692e, 1692e(2)(a), 1692e(10), and 1692f.

## COUNT IV – FDCPA

115. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

116. Count IV is brought on behalf of Plaintiffs Bauer and Dunn.

117. The statement in <u>Exhibits D-E</u> that PRA will consider the debt "Paid in Full" if Plaintiffs complete the monthly payment plan, which fails to add up to the full amount of the debt, is inherently or apparently contradictory.

118. The unsophisticated consumer would have no idea how a debt could be paid in full when the full balance was not actually paid.

119. The language is intended to make the consumer call PRA, subjecting him or her to additional collection efforts.

120. Defendant violated 15 U.S.C. §§ 1692e, 1692e(10) and 1692f.

## CLASS ALLEGATIONS

121. Plaintiff brings this action on behalf of a two classes.

122. Class One consists of (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter in the form represented by <u>Exhibit A</u> or <u>Exhibit B</u> or <u>Exhibit C</u> to the complaint in this action, (c) seeking to collect a debt for personal, family or household purposes,

16

(d) between January 25, 2016 and January 25, 2017, inclusive, (e) that was not returned by the postal service.

123. Plaintiffs Severns, Pirkle and Lever are the designated representatives of Class One.

124. Class Two consists of (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter in the form represented by <u>Exhibit D</u> or <u>Exhibit E</u> the complaint in this action, (c) seeking to collect a debt for personal, family or household purposes, (d) between January 19, 2016 and January 19, 2017, inclusive, (e) that was not returned by the postal service.

125. Plaintiffs Dunn and Bauer are the designated representatives of Class Two.

126. Each Class is so numerous that joinder is impracticable. On information and belief, there are more than 50 members of each Class.

127. There are questions of law and fact common to the members of each class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether the Defendant complied with 15 U.S.C. §§ 1692e and 1692f.

128. Plaintiffs' claims are typical of the claims of the Class members. All are based on the same factual and legal theories.

129. Plaintiffs will fairly and adequately represent the interests of the Class members. Plaintiffs have retained counsel experienced in consumer credit and debt collection abuse cases.

130. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## **JURY DEMAND**

131. Plaintiffs hereby demand a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that the Court enter judgment in favor of Plaintiffs and the Class and against Defendant for:

(a) actual damages;

(b) statutory damages;

(c) attorneys' fees, litigation expenses and costs of suit; and

(d) such other or further relief as the Court deems proper.

Dated: January 25, 2017

**ADEMI & O'REILLY, LLP**

By: /S/ John D. Blythin
Shpetim Ademi (SBN 1026973)
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Denise L. Morris (SBN 1097911)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
sademi@ademilaw.com
jblythin@ademilaw.com
meldridge@ademilaw.com
dmorris@ademilaw.com